CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **DAKOTA SHAYE PALAISA,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:25cv00871** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | **By: Robert S. Ballou** |
| **CHILDRESS, et al.,** | ) | **United States District Judge** |
| **Defendants.** | ) | |

Dakota Shaye Palaisa, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he did not receive appropriate medical care for an eye infection while detained at Amherst County Adult Detention Center. Dkt. 1. The case was conditionally filed, Dkt. 3, and on July 8, 2026, Palaisa was ordered to amend his Complaint within 30 days because he failed to state a claim under § 1983. Dkt. 17. To date, Palaisa has not amended and more than 30 days have elapsed. For the following reasons, I conclude that the action must be summarily dismissed.

In the caption of his Complaint, Palaisa names seven defendants, four by last name only and the other three are John or Jane Does. The Complaint indicates that Palaisa has not filed any grievances regarding the facts of the Complaint. Palaisa contends that the defendants denied him medical treatment for an infection between June 27 and July 2, 2025. Palaisa's claims properly arise under the Fourteenth Amendment because he had not yet been found guilty of the charges for which he had been arrested.[1] *See Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023). As relief, Palaisa requests "[m]onetary compensation of 10 million per named defendant and 15

---

[1] Palaisa asserted his claims under the Eighth Amendment barring cruel and unusual punishment.

million for pain and suffering." Dkt. 1. I find that Palaisa fails to state a claim against any of the Defendants and accordingly, his Complaint must be summarily dismissed.

## I. RELEVANT FACTS

At all times relevant to the Complaint, Palaisa was a pre-trial detainee at Amherst County Adult Detention Center. On June 27, 2025, "having a serious eye infection and notifying staff via Nurse 'Fisk' or John Doe #2, [Palaisa] was made to resign from [his] kitchen job due to an infection." Dkt. 1. Palaisa contends that the resignation "was considered a refusal to work, [Palaisa] was denied medical treatment and placed in segregation, until July 2, 2025 without medical treatment, condition worsening." *Id*. On an unknown date, Palaisa alleges that "without seeing a doctor, [he] was given a 'Rx' for [his] condition." *Id*. Palaisa asserts that "on July 2, 2025 [he] was taken to Lynchburg General Hospital" and later transferred to the University of Virginia, Charlottesville Virginia Hospital, and treated for "approx 9-10 days." *Id*. Palaisa alleges that "John Doe #1, Jane Doe #1, Jane Doe #2, Jane Doe #3, John Doe #3 [and] John Doe #4 all denied medical treatment from June 27, 2025-July 2, 2025." *Id*. Palaisa further alleges that "John Doe #1, John Doe #2, John Doe #3, John Doe #4, Jane Doe #1, Jane Doe #2 and Jane Doe #3 caused pain and suffering and denied medical treatment from June 27, 2025-July 2, 2025." No additional information is provided.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must dismiss the complaint if it is frivolous, malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). While a *pro se* complaint must be construed liberally and "must be held to less

stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), the court cannot ignore a clear failure in the pleadings to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do'… Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" (internal citations omitted)). Furthermore, "[d]istrict judges are not mind readers. Even in the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. DISCUSSION

### A. Section 1983 Claims

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Three of the seven defendants are unknown and the remaining are identified by last name only. Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freech*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citations omitted). Thus, a § 1983 claim requires concise factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by the defendant) (internal citation and

quotation omitted). While Palaisa names seven defendants, he fails to explain what each one personally did to violate his rights. His complaint offers only conclusions and legal jargon, unsupported by any facts.

**B. Rights of a Pretrial Detainee**

"[A] pretrial detainee's claim of constitutionally inadequate medical care is governed by the Fourteenth Amendment, rather than the Eighth Amendment." *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023). "[W]hereas the Eighth Amendment only protects post-conviction detainees from cruel and unusual punishment, the Fourteenth Amendment Due Process Clause protects pretrial detainees from being punished at all." *Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023) (internal quotation marks omitted). To state a claim for deliberate indifference to a medical need under the Fourteenth Amendment, "a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Id*. at 611. The plaintiff need only show that the defendant's action or inaction was "objectively unreasonable," that is, the plaintiff must show that the defendant should have known of that condition and that risk and acted accordingly. *Kingsley*, 576 U.S. at 397.

Since Palaisa was a pretrial detainee at the time of the alleged conduct, his claim is assessed under the Fourteenth Amendment. However, even under the less stringent objective standard, Palaisa wholly fails to state a cognizable claim against any of the defendants. While Palaisa's eye infection may have been a medical condition that posed a risk of serious harm,

Palaisa has failed to provide sufficient facts that support his conclusion. Palaisa alleges that he had a "serious eye infection," but there is no indication that Palaisa himself has the medical training to form that opinion, nor is there any allegation that he was diagnosed by a medical professional trained to make that conclusion. In fact, one of his complaints was that he was given a prescription without seeing a doctor, but fails to provide information about the prescription and who within the jail provided the prescription. However, it seemingly appears that staff recognized a medical need and addressed it at the time, but there is insufficient information to determine whether the condition posed a *substantial risk of serious harm*. Nor does Palaisa provide a description of the "serious eye infection" and why he believed it was a serious eye infection. Furthermore, although not entirely clear as to whether Palaisa was removed from his kitchen job because of his eye infection or another underlying infection, he fails to provide any information as to who specifically removed him from the kitchen job and/or placed him in segregation. Due to the health risk posed to others, common sense would support removal of a kitchen worker handling food items for human consumption where that kitchen worker has any kind of infection and/or placing him in segregation in the event the infection was contagious, especially in a prison environment.

However, assuming *arguendo* that Palaisa has presented sufficient facts to show that he had a serious medical condition that posed a substantial risk of serious harm, his allegations are completely devoid of anything showing how each individual defendant "intentionally, knowingly, or recklessly acted or failed to act" or that they knew or should have known of Palaisa's condition and the risk it presented. Palaisa's allegations are pure conclusions, naked assertions and conjecture. He provides no details about his John and Jane Doe defendants, namely, whether medical professionals, correctional officers or administrators. He fails to

explain who specifically "denied [him] medical treatment and placed [him] in segregation" or attribute the actions or inactions of any of the defendants to the alleged misconduct. Dkt. 1. He also fails to explain why he was placed in segregation – whether due solely to the eye infection or for some other reason, such as a prison lockdown or disciplinary reasons. Furthermore, while he provides the last names of three defendants in the caption of his Complaint, all the Defendants named within the body of the Complaint are John or Jane Does. Not only does he fail to explain what exactly each individual Defendant did to violate his constitutional rights, he does not specifically address how the named Defendants in the caption of his Complaint were involved. In fact, the only defendant Palaisa names by last name in his Complaint is "Nurse 'Fisk.'" Dkt. 1. However, it is unclear from his Complaint whether Palaisa is alleging that he notified either "Nurse 'Fisk' or John Doe #2" or whether Nurse Fisk and John Doe #2 are one in the same. Either way, he only alleges that he "notify[ed] staff via Nurse 'Fisk' or John Doe #2," which fails to show definitively that any of the John and Jane Doe defendants knew or should have known of Palaisa's condition or that their action or inaction posed an *unjustifiably high risk of harm*.[2] Lastly, Palaisa states that not only was he was given a prescription for his "condition" sometime between June 27 and July 2, but that he was treated at two different hospitals on July 2, which tend to contradict his allegation of being denied medical treatment. *Id.*

---

[2] The Court notes that Palaisa filed a Motion for Discovery (Dkt. 7) on December 29, 2025 where Palaisa admits that "without a subpoena, im [sic] not gonna be able to find the full name of the defendants." *Id*. He further advises the Court that he has obtained the name of the company where the Doe defendants are or were allegedly employed, Community Behavioral Health Medical, and appears to insinuate that the Court should subpoena the company to obtain the full names of Doe defendants. However, without more identifying information, it would be extremely onerous for a private company to produce sensitive employee files for John and Jane Does who may have been employed with the company at a certain time on a certain date. For the same reasons that Palaisa's claim fails, without more identifying information of the Doe defendants, the Court cannot grant Palaisa's Motion for Discovery. Accordingly, Palaisa's Motion for Discovery is denied.

At most, Palaisa complains of delayed medical treatment. That Palaisa would have liked treatment more quickly, without more, is not sufficient to state a claim for deliberate indifference. "Mere delay" in medical treatment, without more, is not deliberate inference to a serious medical need. *Moskos v. Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation).

## IV. CONCLUSION

Because Palaisa's complaint presents no legal basis for a claim actionable under § 1983 against the Defendants, the court will summarily dismiss this action without prejudice under § 1915A for failing to state a claim upon which relief can be granted. Dismissal without prejudice leaves Palaisa free to refile his § 1983 claims in a new and separate civil action, if he so desires.

A separate Order will be entered herewith.

Enter: September 30, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge